UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON (EASTERN) DIVISION

|  |  |
|---|---|
| VINCENT VAIANO<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED NATIONAL CORPORATION, ET AL.,<br><br>    Defendants. | Civil No. 1:24-cv-10002-ADB |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

Defendants United National Corporation, First Premier Bank, and Premier Bankcard, LLC[1] (collectively, the "Defendants"), by counsel, and pursuant to Local Civil Rule 7.1(b)(1), hereby submit this Memorandum of Law in Support of their Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and state as follows.[2]

---

[1] Plaintiff's Complaint improperly identifies Premier Bankcard, LLC as "First Premier Bankcard."

[2] Defendants rely on this Motion as their responsive pleading. Courts within this circuit treat motions to compel arbitration similar to those brought under Fed. R. Civ. 12(b)(1) or 12(b)(6). *See, e.g.*, *Mesner v. Fid. Brokerage Servs., LLC*, No. 2:23-cv-00252-JAW, 2023 U.S. Dist. LEXIS 190358, at *31 (D. Me. Oct. 24, 2023) ("Although Fidelity does not refer to a specific rule for its motion to dismiss and to compel arbitration, the Court views its motion as a motion under Rule 12(b)(1) because Fidelity effectively asserts that . . . this Court does not have subject matter jurisdiction over the controversy"); *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 622-629 (1st Cir. 2019) (affirming dismissal of lawsuit in favor of arbitration under Rule 12(b)(1)); *Ortega Hernández v. Herbert J. Sims & Co., Inc.*, CIVIL No. 23-1266 (RAM), 2023 U.S. Dist. LEXIS 111664, at *4-5 (D.P.R. June 26, 2023) ("When there is no factual dispute as to the existence of a valid arbitration agreement, whether the motion to compel is brought pursuant to Rule 12(b)(1) or 12(b)(6) is a distinction without a difference") (internal

## INTRODUCTION

Plaintiff Vincent Vaiano's Complaint (the "Complaint", Dkt. 1-1) generally alleges that Defendants wrongfully reported his credit card debt to credit reporting agencies while he was ill with COVID-19. The Complaint asserts fifteen (15) causes of action against Defendants, alleging negligent and intentional infliction of emotional distress, breach of contract (two counts), and violation of Mass. Ann. Laws ch. 93A against each. While its theories of liability vary, the Complaint's allegations make clear that Plaintiff's grievances arise from his credit relationship with Defendants. That relationship is governed by contract. The contract—a credit card agreement between Plaintiff and First Premier Bank ("First Premier")—included a mandatory arbitration provision whereby Plaintiff agreed to arbitrate of the very type of claims he brings here. Accordingly, this Court should compel Plaintiff to arbitrate these claims and dismiss the Complaint pursuant to 9 U.S.C. § 4 or, in the alternative, stay these proceedings pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

## RELEVANT BACKGROUND

**I.      Plaintiff Agreed to Arbitrate All Claims Relating to His Account.**

Plaintiff opened a credit card account ending in numbers -2590 (the "Account") with First Premier on or about August 12, 2020. Declaration of Julie K. Gilson in Support of Motion to Compel Arbitration ("Gilson Dec.") at ¶ 6. When Plaintiff opened the Account, he received an approval letter (the "Letter") enclosing the credit card along with a copy of First Premier's Credit Card Contract and Account Opening Disclosures (the "Contract"). *Id.* at ¶ 7; Letter, Gilson Dec.

---

punctuation omitted). Defendants reserve the right to challenge the legal sufficiency of Plaintiff's claims in a separate motion to dismiss if this Motion is denied.

Ex. 1; Contract, Gilson Dec., Ex. 2. The Contract contains the terms and conditions governing the Account, as amended from time to time. Gilson Dec. at ¶ 7.

The Contract also contained an "ARBITRATION AND LITIGATION" provision, which provided, in pertinent part:

> **ALL DISPUTES ARISING OUT OF OR RELATED TO THIS CREDIT CARD CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. . . EXCEPT AS OTHERWISE PROVIDED ENTERING INTO THIS AGREEMENT CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY**
>
> […]
>
> **Agreement to Arbitrate:** Any Claim shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this Provision.
>
> […]
>
> **Voluntary Waiver of the Right to a Jury Trial:** As a result of this Provision, neither you nor we have the right to litigate any Claim in court or the right to a jury trial on any Claim, except as provided above. **YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT YOU MAY HAVE TO GO TO COURT OR TO HAVE A JURY TRIAL**
>
> <u>**Governing Law:**</u> This agreement to arbitrate is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended.

*Id.* at 1 (emphasis original). For purposes of the arbitration provision, The Contract further provided that:

> "we" and "us" include our employees, parent companies, subsidiaries, affiliates, beneficiaries, agents and assigns and other persons and entities you assert a Claim against in connection with a Claim you assert against us. For purposes of this Provision, "Claim" means any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Credit Card Contract, your Credit . . . "Claim" shall refer to claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross- claims and third-party claims. All Claims are subject to arbitration, regardless of legal theory and remedy sought, including, but not limited to, claims based in contract, tort (including negligence, intentional

tort, fraud and fraud in the inducement), agency, statutory law (federal and state), administrative regulations or any other source of law (including equity).

*Id.* United National Corporation ("United") is the parent company of both First Premier and Premier Bankcard, LLC ("PBC"). Gilson Dec. ¶ 1. PBC services credit card accounts opened with First Premier. *Id.*

The Contract became effective "upon the earlier of (1) the first Purchase made or Cash Advance taken on your Credit Account, and (2) the expiration of 30 days from the date we issue the Card to you if you do not provide us written notice of your desire to cancel within this 30 days." Contract at 1. The Contract also afforded Plaintiff a 45-day window to reject the arbitration. *See id.* ("**RIGHT TO OPT OUT**: To opt out of this Arbitration Provision, you must mail a written notice to us so that it is postmarked no later than 45 days after we mail your first Card to you."); Gilson Dec. at ¶ 11.

Plaintiff made numerous purchases with Account, which evidence that he received the credit card and accompanying Contract. *See* Gilson Dec. at ¶ 10; Account Statements, Gilson Dec., Ex. 3. First Premier never received a written rejection of the arbitration provision from Plaintiff. Gilson Dec. at ¶ 12.

**II.     Plaintiff Filed This Lawsuit Despite His Agreement to Arbitrate.**

Plaintiff initiated this action by filing the Complaint in Dedham District Court on December 7, 2023. *See* Statement of Damages (Dkt. 1-1) at 6. The Complaint alleges that Plaintiff fell behind on his payment obligations on the Account due to his contracting COVID-19 in 2022. Compl. ¶¶ 7, 9. On or about June 2022, Plaintiff contacted Defendants after noticing an adverse tradeline for the Account on his credit report. *Id.* ¶ 11. Plaintiff was purportedly told that the Account tradeline would be removed from his credit reports to "reflect his situation." *Id.* ¶ 12. The Account tradeline, however, continued to appear on Plaintiff's credit reports. *Id.* ¶ 16. To remedy

4

the situation, in October 2023 Plaintiff sent a payment for the Account "with the understanding that if accepted, his credit card would be restored." *Id.* ¶ 17. This did not happen. *Id.* ¶ 18. Plaintiff alleges that Defendants refused to answer his telephone calls, continued to report the Account to credit bureaus, and refused to investigate the allegedly invalid reporting. *Id.* ¶¶ 19-23.

Counts I and II of the Complaint assert causes of action for breach of contract against United. *Id.* ¶¶ 31-40.  In support, Plaintiff alleges that "on or about April of 2018" he entered into a contract with "agents, servants, and/or employees of the defendant" and that he "fully performed . . . under the contract" *Id.* ¶¶ 32-33, 37-38. These allegations are reproduced in the breach of contract claims against First Premier and PBC. *Id.* ¶¶ 68-69, 73-74, 104-05, 109-10.

Counts III and IV assert claims for intentional and negligent infliction of emotion distress ("IED"), respectively, against United. *Id.* ¶¶ 41-58. As recited in the Complaint, these claims derive from the same misconduct underlying the breach of contract claims. *See id.* ¶¶ 41, 50 (re-alleging and incorporating the allegations contained in the foregoing paragraphs). Plaintiff asserts the same allegations and claims against First Premier and PBC. *Id.* ¶¶ 77-94, 113-30.

The remaining claims in the Complaint are brought against Defendants pursuant to Mass. Ann. Laws ch. 93A. *Id.*  ¶¶ 59-66, 95-102, 131-38. Like the tort and contract claims, each Chapter 93A claim is predicated upon Defendants' negative reporting of the Account. *Id.* ¶¶ 66, 102, 138.

## **STANDARD OF REVIEW**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 167 (1st Cir. 2022) (quoting 9 U.S.C. §

2). "With the [FAA], Congress set a liberal federal policy favoring arbitration." *Rivera-Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). "When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration or compelling the parties to arbitrate and dismissing the action." *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 293 (D. Mass. 2016) (citing 9 U.S.C. §§ 3, 4).

A party invoking the FAA bears the burden of demonstrating "the existence of a valid and enforceable agreement to arbitrate between the parties." *Rodriguez-Rivera*, 43 F.4th at 168 (citations omitted). In making this determination, First Circuit courts apply a summary judgment standard. *Id.* at 168; *see also Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174 (1st Cir. 2021) ("The summary judgment standard, which evaluates the evidentiary supportability of claims, is more appropriate . . . for evaluating whether a moving party has met its burden of demonstrating that arbitrability is not in issue.").

In adjudicating a motion for summary judgement, "the record must be construed in the light most favorable to the non-moving party, with all reasonable inferences drawn in its favor." *Rodriguez-Rivera*, 43 F.4th at 168. The party moving to compel arbitration bears the "burden of production" of evidence demonstrating the existence of a binding agreement to arbitrate. *Crean v. Morgan Stanley Smith Barney, LLC*, 652 F. Supp. 3d 171, 175 (D. Mass. 2023). Once this burden is met, the non-moving party "must offer evidence supporting its own case" and "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitrate rests." *Id.* at 175 (citation omitted). Instead, "'the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'" *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

**ARGUMENT**

To compel arbitration, Defendants "must demonstrate that [1] a valid agreement to arbitrate exists, [2] that [they are] entitled to invoke the arbitration clause, [3] that [Plaintiff] is bound by that clause, and [4] that the claim[s] asserted comes within the clause's scope." *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021). Each requirement is met here.

## I.  A Valid Agreement to Arbitrate Exists.

"When 'deciding whether the parties agreed to arbitrate a certain matter . . . courts . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Crean*, 652 F. Supp. 3d at 179 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[3] In Massachusetts, "the essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds." *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009) (citing *Quinn v. State Ethics Comm'n*, 401 Mass. 210, 516 N.E.2d 124, 127 (Mass. 1987)).

---

[3] The Contract includes a choice-of-law clause specifying that the substantive law of South Dakota shall govern the arbitration provision to the extent the FAA does not apply. (Contract at 1.) Massachusetts district courts, however, "have found that contractual choice-of-law clauses do not apply to a validity determination." *Crean*, 652 F. Supp. 3d at 179 (citing cases). Accordingly, Defendants apply Massachusetts contract law in discussing the validity of the arbitration provision. *See Murray v. Grocery Delivery E-Services USA Inc.*, 460 F. Supp. 3d 93, 97 (D. Mass. 2020) ("this Court applies Massachusetts contract law to determine if the arbitration agreement is valid") (citing cases). It bears noting, however, that the same principles establishing the validity of the arbitration provision under Massachusetts law also establish its validity under North Dakota law. *See* S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1199 (S.D. Cal. 2013) (under South Dakota law "continued use of a credit [card] account" constitutes assent to arbitration"); *Ventura v. 1st Fin. Bank United States*, No. C 03-4515 JF (RS), 2005 U.S. Dist. LEXIS 50253, at *12 (N.D. Cal. Sep. 29, 2005) (noting that S.D. Codified Laws § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card").

In the context of credit card contracts, use of the card manifests acceptance of the terms of the contract, including arbitration provisions. *Christensen v. Barclays Bank Del.*, No. 1:18-cv-12280-ADB, 2019 U.S. Dist. LEXIS 72239, at *11 (D. Mass. Apr. 30, 2019) (finding plaintiff assented to terms of cardmember agreement "when she activated and used her Barclays credit card"); *Hays v. Jefferson Capital Sys., LLC*, No. 15-14025-GAO, 2017 U.S. Dist. LEXIS 14749, at *3 (D. Mass. Feb. 2, 2017) (rejecting objections to the court's consideration of evidence showing the formation of an agreement to arbitrate where the paper trail showed "that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term"); *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 18 (D. Mass. 2018) (finding rebuttable presumption that plaintiff assented to cardholder agreement, including arbitration clause, where plaintiff did not deny "activating her [a]ccount, receiving a card, or using it").

Here, there can be no dispute that Plaintiff opened the Account and used the credit card after receiving the credit card and Contract in the mail. *See* Gilson Dec. at ¶¶ 6-8, 10. Plaintiff's allegations confirm these facts. The Complaint recites the Account number and repeatedly references Plaintiff's payment obligations under the Account. *See, e.g.*, Compl. ¶¶ 7, 9, 14, 17. Moreover, the Complaint repeatedly invokes the Contract—alleging formation, performance, and breach thereof. *See id.* ¶¶ 32-33, 35. By using the Account, Plaintiff manifested his agreement to the terms of the Contract, including the arbitration provision. *See Hays v. Jefferson Capital Sys.*, 2017 U.S. Dist. LEXIS 14749, at *3; *Oyola*, 295 F. Supp. 3d at 18.

II.   **Defendants Are Entitled to Invoke, and Plaintiff is Bound By, the Arbitration Provision.**

Under the terms of the Contract's arbitration provision, both United and PBC qualify as parties entitled to invoke arbitration. *See* Contract at 1 ("For purposes of this Provision, "we" and "us" include . . . parent companies . . . affiliates, beneficiaries, agents and assigns"). Accordingly,

8

each Defendant—including First Premier, the signatory to the contract—may compel arbitration of the claims directed at them in the Complaint. *See Perez-Tejada v. Mattress Firm, Inc.*, Civil Action No. 17-12448-DJC, 2019 U.S. Dist. LEXIS 27324, at *18-19 (D. Mass. Feb. 21, 2019) (allowing employees of signatory to arbitration agreement to invoke arbitration where agreement required arbitration for "claims against all parent and subsidiary and related companies . . . as well as employees.")

Even assuming the foregoing terms do not encompass United and PBC, "nonparties may invoke an arbitration agreement where state law applicable to all contracts would allow it." *Tissera v. NRT New Eng.*, 438 F. Supp. 3d 115, 123 (D. Mass. 2020). In Massachusetts, the doctrine of equitable estoppel "precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). "Massachusetts law recognizes two circumstances in which equitable estoppel allows a nonsignatory to compel arbitration: '(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or (2) when a signatory raises allegations of substantially interdepending and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Tissera*, 438 F. Supp. 3d at 123 (quoting *Machado v. System4 LLC*, 471 Mass. 204, 211 (2015)).

Both circumstances are present here. First, Plaintiff may not rely on the Contract in asserting claims against United and PBC but disavow the availability of arbitration to either entity under the Contract. *See Machado*, 471 Mass. at 211-12 ("The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the sine qua non of an appropriate situation for applying equitable estoppel."). Moreover, while the Complaint names United, First Premier, and PBC as individual defendants, its substantive

9

allegations refer to a "company" in the singular. *See* Compl. ¶¶ 8, 11-12, 16-19, 21, 24, 26, 28-30. Collective allegations such as these constitute the type of interdependent and concerted misconduct among non-signatories and a signatory that is sufficient for application of equitable estoppel. *Tissera*, 438 F. Supp. 3d at 123 ("Courts have routinely found that where plaintiffs fail to distinguish between defendants when asserting claims, they have effectively alleged interdependent and concerted misconduct.") (citing *Machado*, 471 Mass. at 215-16).

For the foregoing reasons, Defendants are entitled to invoke, and Plaintiff is bound by, the arbitration provision in the Contract.

### III.   Plaintiff's Claims are Within the Scope of the Arbitration Provision.

In determining whether the particular dispute falls within a valid arbitration agreement's scope, "'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 347 (D. Mass. 2015) (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). "In other words, if the contract is ambiguous as to whether arbitration is mandatory, the federal policy favoring arbitration applies." *Id.* (citation omitted). Absent ambiguity, an arbitration provision must be enforced according to its terms. *Laughton v. CGI Techs. & Sols., Inc.*, 602 F. Supp. 2d 262, 264 (D. Mass. 2009).

The Contract's arbitration provision defines "Claim" as "any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Credit Card Contract, your Credit Account, any transaction on your Credit Account and our relationship." Contract at 1. It further provides that "All Claims are subject to arbitration regardless of legal theory and remedy sought, including but not limited to, claims based in contract, tort . . . [and] statutory law (federal and

state." *Id*. The Complaint asserts causes of action for breach of contract, intentional and negligent IED, and violation of Mass. Ann. Laws ch. 93A in connection with Plaintiff's Account and Defendants' allegedly invalid reporting of the Account to credit reporting agencies. *See supra* at 4-5.

The terms of the arbitration provision are unambiguous and explicitly encompass the very type of claims Plaintiff seeks to press in court. Because these claims arise from the Account and Plaintiff's relationship with Defendants stemming from the Account, they are plainly subject to arbitration. *See Laughton*, 602 F. Supp. 2d at 265-66 (holding plaintiffs' claims for breach of contract, negligence, fraud, and violation of Mass. Ann. Laws ch. 93A to be arbitrable issues as they "clearly constitute matters aris[ing] under the terms" of the contract and the parties' performance of same and, therefore, were "within the purview" of the contract's Arbitration provision").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court its Motion to Compel Arbitration of Plaintiff's claims and dismiss the Complaint pursuant to 9 U.S.C. § 4 or, in the alternative, stay these proceedings pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

Dated: January 9, 2024                    Respectfully submitted:

*/s/ Danni L. Shanel*
Danni L. Shanel, Esq. (Bar No. 710378)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
125 High Street, 19th Floor
Boston, MA 02110
Telephone: (617) 204-5100
Danni.Shanel@troutman.com

*Attorney for Defendants United National Corporation, First Premier Bank, and Premier Bankcard, LLC*

## CERTIFICATION UNDER LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), the undersigned certifies that counsel for Defendants conferred with *pro se* Plaintiff regarding this motion, but the parties were unable to reach an agreement.

/s/ Danni L. Shanel
Danni L. Shanel, Esq. (Bar No. 710378)

## CERTIFICATE OF SERVICE

I, Danni L. Shanel, hereby certify that on January 9, 2024 a true and correct copy of the foregoing *Memorandum in Support of Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, Stay Proceedings* was served via First Class, U.S. Mail, postage prepaid upon Plaintiff at the below address:

Vincent Vaiano
Pro Se Plaintiff
95 University Avenue, Apt 2128, Westwood, MA 02090

/s/ Danni L. Shanel
Danni L. Shanel (BBO#710378)