UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VINCENT VAIANO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 24-cv-10002-ADB |
| | * | |
| UNITED NATIONAL CORPORATION; | * | |
| FIRST PREMIER BANK; AND | * | |
| FIRST PREMIER BANKCARD, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Vincent Vaiano ("Plaintiff" or "Vaiano") brings this action against Defendants United

National Corporation ("United"), First Premier Bank ("FPB"), and Premier Bankcard, LLC[1]

("PBC" and, collectively, "Defendants"), related to Defendants' alleged wrongful reporting of

Plaintiff's credit card debt to credit reporting agencies. [ECF No. 1-1 ("Complaint" or

"Compl.")]. Presently before the Court is Defendants' motion to compel arbitration of Plaintiff's

claims and to either dismiss or stay this action pursuant to the Federal Arbitration Act ("FAA").

[ECF No. 5]. For the reasons set forth below, the motion is <u>GRANTED</u>, and this case is

---

[1] Defendants point out and Plaintiff does not dispute that the Complaint incorrectly identifies
Premier Bankcard, LCC as "First Premier Bankcard." [ECF No. 6 at 1 n.1; ECF No. 9]. This
does not impact the merits of the present motion. Either party is free to move to amend the case
caption if so inclined.

STAYED pending the completion of arbitration.

## I.     BACKGROUND

Because the instant motion "was made in connection with a motion to dismiss or stay, [the Court] draw[s] the relevant facts from the operative complaint and the documents submitted to the . . . [C]ourt in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (citing Gove v. Career Sys. Dev. Corp., 689 F.3d 1, 2 (1st Cir. 2012)).  The facts outlined herein are undisputed except where noted.

### A.     Factual Background

On or about August 10, 2020, Plaintiff submitted an online credit card application to FPB, a subsidiary of United.  [ECF No. 5-1 ("Gilson Decl.") ¶¶ 1, 6–7].  A couple of days later, on or about August 12, 2020, FPB approved Plaintiff's application and he subsequently received his credit card ending in numbers -2590 (the "Account"), along with the contract and the account opening disclosures (collectively, the "Contract"), via mail.  [Id. ¶¶ 6–9; ECF Nos. 5-2, 5-3].

The Contract, "contain[ing] the terms and conditions governing the Account," also includes an "Arbitration and Litigation" provision (the "Arbitration Agreement").  [ECF No. 5-3 at 2].  Specifically, the Arbitration Agreement states that

> ALL DISPUTES ARISING OUT OF OR RELATED TO THIS CREDIT CARD CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. . . . EXCEPT AS OTHERWISE PROVIDED, ENTERING INTO THIS AGREEMENT CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY. . . .
>
> **Agreement to Arbitrate:** Any Claim shall be resolved and settled exclusively and finally by binding arbitration, in accordance with this Provision.

[Id.].

The Contract also provides that, for purposes of the arbitration provision,

> "we" and "us" include our employees, parent companies, subsidiaries, affiliates,

> beneficiaries, agents and assigns and other persons and entities you assert a Claim against in connection with a Claim you assert against us. For purposes of this Provision, "Claim" means any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Credit Card Contract [or] your Credit Account . . . . "Claim" shall refer to claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross-claims and third-party claims. All Claims are subject to arbitration, regardless of legal theory and remedy sought, including, but not limited to, claims based in contract, tort (including negligence, intentional tort, fraud and fraud in the inducement), agency, statutory law (federal and state), administrative regulations or any other source of law (including equity).

[ECF No. 5-3 at 2].

The Contract further specifies that it would be "effective upon the earlier of (1) the first Purchase made or Cash Advance taken on your Credit Account, and (2) the expiration of 30 days from the date we issue the Card to you if you do not provide us written notice of your desire to cancel within this 30 days." [ECF No. 5-3 at 2]. In addition, the Arbitration Agreement contains a forty-five day opt-out window, providing that "[t]o opt out of this Arbitration Provision, you must mail a written notice to us so that it is postmarked no later than 45 days after we mail your first Card to you." [Id.].

Plaintiff first used the Account to make a purchase on August 27, 2020. [ECF No. 5-4 at 8; Gilson Decl. ¶ 10]. Defendants assert that they never received a written rejection of the Arbitration Agreement, [ECF No. 6 at 4], and Plaintiff does not claim otherwise, see generally [ECF No. 9].

Plaintiff fully "paid all of his bills until 2022, when he contracted [COVID-19]," [Compl. ¶ 9], and subsequently "was out of work for six months," [id.]. As a result, he fell behind his credit card payments. See [id.]. In June 2022, Plaintiff obtained a credit report and learned of the adverse tradeline for the Account.[2] [Id. ¶ 11]. He reached out to Defendants who told him

---

[2] Defendants refer to Plaintiff's Account tradeline on his credit report. [ECF No. 6 at 4]. In a credit report, a credit card is associated with a tradeline. The tradeline represents, among other

that "the [A]ccount [tradeline] would be removed and his credit reports would be updated to reflect his situation." [Id. ¶ 12]. Despite this assurance, one month later "the negative credit report[s] still existed," [id. ¶ 13], and Defendants failed to fix Plaintiff's credit report, [id. ¶ 16].

In October 2023, Plaintiff "sent a payment [to Defendants] with the understanding that if accepted, his credit card would be restored." [Compl. ¶ 17]. According to Plaintiff, Defendants "accepted the payment and failed to restore [his] credit privileges." [Id. ¶ 18]. During this time, Defendants were not "answering the phone," and therefore Plaintiff could not "arrange to erase the [tradeline] [A]ccount from [his] credit reports." [Id. ¶ 19]. Plaintiff asserts that the "grossly inaccurate reporting of [his] account . . . affected [his] credit record for several months," causing his "credit record [to be] adversely affected." [Id. ¶¶ 19, 22]. Plaintiff also avers that Defendants did not investigate his "complaint that the [tradeline] [A]ccount should have been handled different[ly]." [Id. ¶ 21].

## B.    Procedural Background

Plaintiff initiated this action by filing the Complaint in Dedham District Court on December 7, 2023, [Compl. at 6], alleging fifteen causes of action, including breach of contract (Counts I, II, VI, VII, XI, and XII); intentional infliction of emotional distress (Counts III, VIII, and XIII); negligent infliction of emotional distress (Counts IV, IX, and XIV); and violations of Massachusetts General Laws Chapter 93A (Counts V, X, and XV). [Id. at 11–23]. On January 2, 2024, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, [ECF No. 1-2 at 2], and thereafter moved to compel arbitration of Plaintiff's claims and to either dismiss the Complaint, or, alternatively, to stay the proceedings pending the outcome of

---

things, a cardholder's repayment habits. If a cardholder becomes delinquent in his payments, his tradeline is adversely affected, which can impact his credit score and general credit worthiness.

the arbitration, [ECF No. 5 ("Motion to Compel Arbitration")].  Plaintiff opposed on February

16, 2024, [ECF No. 9 ("Opp'n")].

## II.      LEGAL STANDARD

This Court's review of Defendants' motion is governed by the FAA, 9 U.S.C. §§ 1–16,

which "embodies the national policy favoring arbitration and places arbitration agreements on

equal footing with all other contracts," Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa &

Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna,

546 U.S. 440, 443 (2006).  The FAA provides that "[a] written provision in . . . a contract . . . to

settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  "[T]he FAA does not compel arbitration unless the

Court is satisfied that there exists a valid agreement to arbitrate."  Emmanuel v. Handy Techs.,

Inc., 442 F. Supp. 3d 385, 391 (D. Mass. 2020) (citing Volt. Information Scis., Inc. v. Bd. of Trs.

of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)), aff'd, 992 F.3d 1 (1st Cir. 2021); see

also Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022).  "Consequently, arbitration clauses are

subject to 'generally applicable contract defenses' available under state law."  Handy Techs, 442

F. Supp. 3d at 391 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339–40 (2011)).

The party seeking to compel arbitration bears the burden of proving "that a valid

agreement to arbitrate exists, the movant has the right to enforce it, the other party is bound by it,

and that the claim asserted falls within the scope of the arbitration agreement."  Oyola v. Midland

Funding, LLC, 295 F. Supp. 3d 14, 16–17 (D. Mass. 2018).  "[I]f the party moving to compel

arbitration meets its initial burden of production, the non-moving party must offer evidence

supporting its own case," Crean v. Morgan Stanley Smith Barney, LLC, 652 F. Supp. 3d 171, 175

(D. Mass. 2023) (quoting <u>Casale v. Ecolab Inc.</u>, No. 21-cv-00126, 2022 WL 1910126, at *4 (D. Me. June 3, 2022)), but "[t]he non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial,'" <u>Air-Con, Inc. v. Daikin Applied Latin Am., LLC</u>, 21 F.4th 168, 175 n.8 (1st Cir. 2021) (quoting <u>Soto v. State Indus. Prods.</u>, 642 F.3d 67, 72 n.2 (1st Cir. 2011)).

In evaluating motions to compel arbitration under the FAA, "district courts . . . apply the summary judgment standard." <u>Air-Con</u>, 21 F.4th at 175.  Under this standard, "[i]f the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." <u>Id.</u> (citing 9 U.S.C. § 4; <u>Neb. Mach. Co., Inc. v. Cargotec Sols., LLC</u>, 762 F.3d 737, 744 (8th Cir. 2014)).  In conducting this review, the Court "construe[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." <u>Id.</u>

A court may enforce a valid arbitration agreement "by staying existing litigation pending arbitration or compelling the parties to arbitrate and dismissing the action." <u>Bekele v. Lyft, Inc.</u>, 199 F. Supp. 3d 284, 293 (D. Mass. 2016) (citing 9 U.S.C. §§ 3, 4), <u>aff'd</u>, 918 F.3d 181 (1st Cir. 2019).  "Where one side is entitled to arbitration of a claim brought in court, [] a district court can, in its discretion, choose to dismiss the lawsuit, if all claims asserted in the case are found arbitrable.  If some claims are non-arbitrable, the district court cannot dismiss the entire case." <u>Next Step Med. Co. v. Johnson & Johnson Int'l</u>, 619 F.3d 67, 71 (1st Cir. 2010) (internal citations omitted and emphasis removed) (citing <u>Bercovitch. v. Baldwin Sch., Inc.</u>, 133 F.3d 141, 156 n.21 (1st Cir. 1998)).

## III.        DISCUSSION

Plaintiff argues that Defendants' motion to compel arbitration should be denied because (1) there was no valid agreement to arbitrate, [Opp'n at 5–13], and (2) the tort and 93A claims do not come within the Arbitration Agreement's scope, see [id. at 5, 8, 9–10, 13].

As a preliminary matter, the Court notes that there is a dispute as to when Plaintiff entered into the Contract.  While Plaintiff repeatedly refers to a contract entered into with Defendants "[o]n or about APRIL OF 2018," see, e.g., [ECF No. 1-1 at 11, 15, 19], he offers no evidence to support this allegation, nor does he claim that this supposed 2018 contract is the same or related to the credit card contract at issue here, see generally [Compl; Opp'n]. Furthermore, Plaintiff does not dispute the authenticity and accuracy of the initial account documents, including the exemplary Contract, offered by Defendants, [ECF Nos. 5-2, 5-3], or contest the declaration of Julie K. Gilson, which states that his account was opened August 12, 2020, [Gilson Decl. ¶ 6].  Because Defendants have "met[][their] initial burden of production," Crean, 652 F. Supp. 3d at 175 (D. Mass. 2023) (quoting Casale, 2022 WL 1910126, at *4), and Plaintiff has not "offer[ed] evidence supporting [his] own case," [id.], the Court finds that there is no "genuine issue of fact" as to the date on which Plaintiff opened the credit card account with Defendants and accepts August 12, 2020 as the operative date, see [id.].

### a.  A Valid Agreement to Arbitrate

While Defendants argue that Plaintiff's use of the credit card manifested his acceptance of the credit card contract, including its arbitration provision, Plaintiff disputes the existence of an agreement to arbitrate.  [ECF No. 6 at 7–8; Opp'n at 5–12].  Specifically, Plaintiff argues that

(1) "there was no meeting of the minds,"[3] because "Plaintiff was never afforded the privilege of agreeing to an arbitration clause," [Opp'n at 6–7], and "did not agree to arbitrate tort claims," [id. at 7]; (2) "there [was] no consideration supporting the arbitration [agreement]," [id. at 11]; (3) the contract is unconscionable because (a) it violates public policy, (b) given the unequal bargaining power between the parties, the contract is unenforceable, and (c) it uses impermissible "fine print," [id. at 7–9]; and (4) the Arbitration Agreement is too vague, [id. at 11–12].

### i. Massachusetts Law Applies

The Court, with the apparent agreement of both parties, applies Massachusetts law to determine whether a valid agreement to arbitrate exists.  See [ ECF No. 6 at 7; Opp'n at 7].  See Crean, 652 F. Supp. 3d at 179 ("[I]n 'deciding whether the parties agreed to arbitrate a certain matter [under the FAA] . . . courts . . . should apply ordinary state-law principles that govern the formation of contracts.'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995))).[4]  "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration."  Doe v. Trs. of Bos. Coll., 892 F.3d 67, 89 (1st Cir. 2018) (citing Quinn v. State Ethics Comm'n, 516 N.E.2d 124, 127 (Mass. 1987)).  With regard to credit cards, courts generally consider the use of the card as acceptance of the contract. See, e.g., Christensen v. Barclays Bank Del., No. 18-cv-12280, 2019 WL 1921710, at *4 (D.

---

[3] "In contract formation, the element of agreement or mutual assent is often referred to as a 'meeting of the minds.'"  I & R Mech. Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 800 (Mass. App. Ct. 2004) (quoting Restatement (Second) of Contracts § 17 cmt. C (Am. L. Inst. 1981)).

[4] Although the Contract contains a choice-of-law provision, "the Agreement's choice-of-law provision does not apply to the validity of the contract's formation, [rather] Massachusetts choice-of-law rules will directly determine which state's law does apply [to the validity determination]."  Bekele, 199 F. Supp. 3d at 294 n.4 (quoting NPS, LLC v. Ambac Assurance Corp., 706 F. Supp. 2d 162, 168 (D. Mass. 2010)).

Mass. Apr. 30, 2019) ("Plaintiff accepted the terms of the Cardmember Agreement when she activated and used her Barclays credit card"); Hays v. Jefferson Cap. Sys., LLC, No. 15-cv-14025, 2017 WL 449590, *1 (D. Mass. Feb. 2, 2017) (similar).

### ii.     Meeting of the Minds

Plaintiff's claim that there was no meeting of the minds because he "was never afforded the privilege of agreeing to an arbitration clause," [Opp'n at 6–7], is unsupported.  As noted above, Plaintiff made his first purchase on August 27, 2020, [ECF No. 5-4 at 8].  He thereby "manifested receipt of the [Contract] and his assent to its arbitration term."  Christensen, 2019 WL 1921710, at *4; see also Hays, 2017 WL 449590, at *1 ("The paper trail . . . shows that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term."); CACH, LLC v. Yue Fang, No. 18-P-1558, 2019 WL 2713079, at *2 (Mass. App. Ct. June 28, 2019) ( "using [a] credit card and making a payment on the debt incurred by such use . . . manifest[s] agreement").  Accordingly, there was a sufficient "meeting of the minds" to form an enforceable contract.

### iii.     Consideration

Plaintiff further argues that the Arbitration Agreement is illusory because it lacks consideration from Defendants as they can unilaterally change the terms of the agreement to avoid arbitration.[5]  [Opp'n at 10–11].  Plaintiff, however, misstates the applicable law.

According to Massachusetts law, an arbitration agreement is illusory if one party "ha[s]

---

[5] Plaintiff also contends that only he, but not Defendants, is required to arbitrate claims arising out of the Contract.  [Opp'n at 11 ("But there is no reciprocal waiver [relating to waiving one's right to litigate claims in court] on the part of United National or any other Defendant.  If United National (or any other Defendant) initiated an action against the plaintiff in court, the plaintiff plainly could not invoke the arbitration language in the Statement on the basis that United National (or any other Defendant) waived their right to proceed, making the language illusory

the power to require [the other party] to arbitrate the covered dispute, while simultaneously

reserving the right to modify the agreement" without notice to the other party.  <u>Domenichetti v.</u>

<u>Salter Sch., LLC</u>, No. 12-11311, 2013 WL 1748402, at *7 (D. Mass. Apr. 19, 2013).  The

Contract at issue here allows Defendants to "change [the] Contract from time to time," as long as

they "notify [Plaintiff] in writing of any change if required by law."  [ECF No. 5-3 at 3].

Furthermore, the contract terms state that "[i]f [Defendants] later amend th[e] [Arbitration]

Provision," they will "let [Plaintiff] know if [he] can opt out of that amendment and, if so, how

[he] can do so."  [<u>Id.</u> at 2].  As Defendants can only modify the arbitration provision with notice

to Plaintiff, <u>see</u> [<u>id.</u> at 2–3], the Court finds that the Contract is not illusory.[6]

### iv.   Unconscionability

Plaintiff makes several arguments, some without citation to legal authority, suggesting

that the Arbitration Agreement is unconscionable because (1) it uses small or fine print, [Opp'n

at 7–8]; (2) the unequal bargaining power between the parties resulted in an unenforceable

contract, [<u>id.</u> at 8–9]; and (3) it violates public policy, [<u>id.</u> at 9–10].  These arguments do not

---

and lacking the requisite consideration.")].  Whether or not Defendants fall within the scope of
the Contract is addressed below.  <u>See</u> <u>infra</u>.

[6] Separately, the Court considers the fact that the arbitration provision at issue here is contained
within an overarching credit card agreement.  [ECF No. 5-3 at 2–3].  Courts have held that where
an arbitration agreement is contained within a larger overarching agreement that is adequately
supported by consideration, the arbitration provision remains valid and enforceable even without
consideration specific to the arbitration agreement.  <u>See</u> <u>Britto v. Prospect Chartercare SJHSRI,</u>
<u>LLC</u>, 909 F.3d 506, 513 (1st Cir. 2018) (refusing to decide whether lower court correctly
rejected argument that contract at issue was illusory, instead agreeing with lower court's
determination that there was other "sufficient independent consideration to make the agreement
enforceable").  <u>Mendivil v. Zanios Foods, Inc.</u>, a case Plaintiff cites to for the proposition that
the Arbitration Agreement is illusory because it lacks consideration from Defendants, likewise
states that "[a]rbitration clauses generally do not require mutuality of obligation so long as
adequate consideration supports the underlying contract."  357 S.W.3d 827, 831 (Tex. App.
2012) (citing <u>In re Lyon Fin. Servs., Inc.</u>, 257 S.W.3d 228, 233 (Tex. 2008)).

support a finding of unconscionability.

"To show unconscionability under Massachusetts law, [a plaintiff] must prove 'both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).'" Bekele, 918 F.3d at 187–88 (emphasis removed) (quoting Machado v. System4 LLC, 28 N.E.3d 401, 414 (Mass. 2015)).  Plaintiff's arguments regarding small print and bargaining power go to procedural unconscionability, while his public policy argument goes to substantive unconscionability.

A provision that is in small and fine print may render the contract procedurally unconscionable if its content results in an "unfair surprise." Storie v. Household Int'l, Inc., No. 03-cv-40268, 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005).  Courts consider whether the print is bolded, capitalized, or separate in some way, and whether the provision is demarcated by a bolded or enlarged heading.  See Bekele, 199 F. Supp. 3d at 301.

Here, the Arbitration Agreement in the Contract is "preceded by a clearly-worded, bolded, all-caps header," the provision itself "uses fairly clear language," and the waiver section clearly "concludes, again in all caps," Bekele, 199 F. Supp. 3d at 301–02; [ECF No. 5-3 at 2 ("**ARBITRATION AND LITIGATION**"); id. ("**EXCEPT AS OTHERWISE PROVIDED, ENTERING INTO THIS AGREEMENT CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS IN COURT OR BEFORE A JUDGE OR JURY**")].  The Court therefore finds that the print size used here does not support a finding of unconscionability.

Further, under Massachusetts law, a contract is not unconscionable simply because there is an imbalance of bargaining power.  Bekele, 199 F. Supp. 3d at 303 ("'[I]nequality in

bargaining power,' standing alone, 'is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.'" (quoting Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 16–17 (1st Cir. 1999))).  Without more, such as a "showing of fraud or oppressive conduct" by a defendant, an arbitration agreement is valid.  Deluca v. Bear Stearns & Co., 175 F.Supp.2d 102, 114–15 (D.Mass.2001) (discussing arbitration agreements in the employment context).  Here, Plaintiff does not plead any facts that amount to Defendants engaging in fraud or oppressive conduct, and the Court consequently finds that Plaintiff's argument that the agreement was "one-sided" and "caused by unequal bargaining power" does not establish unconscionability.  See generally [Opp'n].

Plaintiff further argues that the Contract violates public policy because it "preclude[s] [him] from recovering in arbitration what otherwise would be available in [c]ivil [c]ourt." [Opp'n at 9].  Although certain contracts that contain a "'prospective waiver of a party's right to pursue statutory remedies' could be unenforceable as unconscionable or against public policy," McInnes v. LPL Fin., LLC, 994 N.E.2d 790, 792 (Mass. 2013) (emphasis removed) (quoting Am. Exp. Co. v. Italian Colors Restaurant, 570 U.S. 228, 236 (2013)), this is not the case here. There was no such waiver and Plaintiff retained his right to pursue any claim, including statutory claims, through the arbitration process.  Notably, per the terms of the Contract, Plaintiff can pursue both statutory federal and state law through arbitration.  See [ECF No. 5-3 at 2].  In short, Plaintiff has failed to establish that the Arbitration Agreement is either procedurally or substantively unconscionable.

> **v.    Vagueness and Ambiguity**

Plaintiff next argues that the Arbitration Agreement is unenforceable because it is "unenforceably vague."  [Opp'n at 11–12].  "Under Massachusetts law, an 'ambiguity arises only

if a reasonable person could read the provision more than one way.'" Shen v. CMFG Life Ins. Co., No. 15-cv-11593, 2016 WL 1129308, at *8 (D. Mass. Mar. 4, 2016) (quoting HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 574 (1st Cir. 2014)), R&R adopted, 2016 WL 1189125 (D. Mass. Mar. 22, 2016).  "[W]hether a provision is ambiguous is a question of law . . . [and the Court] must read the provision 'in the context of the entire contract rather than in isolation . . . .'"  O'Neill, 745 F.3d at 574 (quoting Gen. Convention of the New Jerusalem in the U.S.A. v. Mackenzie, 874 N.E.2d 1084, 1087 (Mass. 2007)).

The Arbitration Agreement here is neither vague nor ambiguous and, contrary to Plaintiff's argument, does significantly more than merely state "[t]he word 'arbitration.'" [Opp'n at 12].  Rather, it spells out in clear terms that "**THIS AGREEMENT CONSTITUES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY.**"  [ECF No. 5-3 at 2].  The agreement even defines arbitration and how any potential disputes would be resolved.  [Id.].  A reasonable individual could interpret the Arbitration Agreement in only one way—as an agreement that "[a]ny [c]laim shall be resolved and settled exclusively and finally by binding arbitration."  [Id.].[7]

Thus, Defendants have established the three required elements of a contract under Massachusetts law and the Court finds that a valid agreement to arbitrate exists between the

---

[7] Plaintiff further cites law from the Fifth and Eleventh Circuits for the proposition that courts "routinely decline to compel arbitration" when the rules or designated forum in the arbitration agreement become unavailable.  [Opp'n at 12 (citing Ranzy v. Tijerina, 393 F. App'x 174, 176 (5th Cir. 2010); Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1348 (11th Cir. 2014))].  The Contract here, however, does not stipulate a set of rules or a forum that is no longer available.  See [ECF No. 5-3 at 2 ("The party bringing the Claim may file its Claim at the American Arbitration Association ("AAA"), or an arbitration organization mutually agreed upon by the parties.")].

parties.

### b.   Plaintiff's Claims Are Within the Scope of the Arbitration Provision

The Court must next decide whether Plaintiff's claims fall within the scope of the arbitration provision.  While Defendants contend that terms of the arbitration provision plainly include "the very type of claims Plaintiff seeks to press in court," [ECF No. 6 at 11], Plaintiff argues that the "arbitration agreement isn't enforceable in cases of Chapter 93A, and in cases of Tort Law," [Opp'n. at 5], and that "the effect of compelling arbitration [of 93A and tort claims] would be to chill Massachusetts tort laws and the Massachusetts Consumer Protection Laws," [id. at 6].  The Court disagrees.

"The Supreme Court [has] made clear that where an agreement to arbitrate some issues exists, and there is a dispute over the scope of the arbitration agreement, the law requires that those matters be presumed to be arbitrable 'unless it is clear that the arbitration clause has not included them.'"  Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 31 (1st Cir. 2021) (quoting First Options of Chi., Inc., 514 U.S. at 945 (internal quotations omitted)); see also U.S. ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 347 (D. Mass. 2015) ("[T]here is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 524 (3d Cir. 2009))), aff'd sub nom. Hagerty ex rel. U.S. v. Cyberonics, Inc., 844 F.3d 26 (1st Cir. 2016); Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014) ("[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." (quoting PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir.

2010))).

The Contract's arbitration provision provides that

"Claim" shall refer to claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross-claims and third-party claims.  All Claims are subject to arbitration, regardless of legal theory and remedy sought, including, but not limited to, claims *based in contract, tort (including negligence, intentional tort, fraud and fraud in the inducement), agency, statutory law (federal and state)*, administrative regulations or any other source of law (including equity).

[ECF No. 5-3 at 2 (emphasis added)].

Plaintiff asserts numerous causes of action: breach of contract (Counts I, II, VI, VII, XI, and XII), intentional infliction of emotional distress (Counts III, VIII, and XIII), negligent infliction of emotional distress (Counts IV, IX, XIV), and violation of Mass. Gen. Laws ch. 93A (Counts V, X, and XV).  [Compl. at 11–23].  These types of claims fall squarely within the purview of the arbitration provision, specifically "claims based in contract, tort[,]. . . [and] statutory law."  [ECF No. 5-3 at 2].  Plaintiff's grievances, moreover, arise in connection with the Contract and Defendants' performance under it.  They are thus arbitrable.  Laughton v. CGI Techs. & Sols., Inc., 602 F. Supp. 2d 262, 265–66 (D. Mass. 2009)

As to the arbitrability of Chapter 93A claims more specifically, Massachusetts law provides that "where [a] contract involves interstate commerce and the agreement to arbitrate is enforceable under the [FAA]," claims alleging violations of 93A are arbitrable.  McInnes, 994 N.E.2d at 792; see also Schwartz v. CACH, LLC, No. 13-cv-12644, 2014 WL 298107, at *1 (D. Mass. Jan. 27, 2014) (compelling arbitration of 93A claims); Adams v. Babo, No. 20-0998, 2021 WL 3651857, at *3 (Mass. Super. Mar. 19, 2021) (concluding that applicability of FAA preempts 93A limitations on arbitration).  As the FAA applies to the Arbitration Agreement at issue here, see [ECF No. 5-3 at 2 ("This agreement to arbitrate is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§

1–16.")], Plaintiff's 93A claims can be arbitrated.  Moreover, even setting aside those contractual provisions, the FAA would still apply.  Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 7 (1st Cir. 2019) ("[T]he FAA applies to 'a contract evidencing a transaction involving [interstate] commerce.'" (quoting Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42 (1st Cir. 2017), abrogated on other grounds by Badgerow v. Walters, 596 U.S. 1 (2022))).  The Arbitration Agreement here is in "a contract for a consumer credit card between citizens of two different states" (Massachusetts and South Dakota, [Compl. ¶¶ 1–2; Gilson Decl. ¶ 1]), Krause v. Barclays Bank Del., No. 2:13-cv-01734, 2013 WL 6145261, at *2 (E.D. Cal. Nov. 21, 2013), and it "[a]ccordingly . . . 'involv[es] interstate commerce,'" id. (citing Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012)); see also Bernsley v. Barclays Bank Del., 657 F. Supp. 3d 1327, 1340 (C.D. Cal. 2023) (noting that "a citizen of Delaware [who] is engaged in the business of extending credit across state lines into California" is "clearly [involved in] interstate commerce").  Thus, the FAA applies and the Court finds no reason why Plaintiff's Chapter 93A claims should not come within the scope of the arbitration provision.  Furthermore, contrary to Plaintiff's contention, there is no prohibition against arbitrating tort claims.  See, e.g., Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 507, 519 (1st Cir. 2020) (ordering district court to compel arbitration of dispute where plaintiff brought both contract and tort claims).  Accordingly, the Court finds that Plaintiff's claims fall within the scope of the Arbitration Agreement.

### c.  Defendants Are Entitled to Invoke Arbitration & Plaintiff is Bound by the Arbitration Agreement

Finally, Defendants argue, unopposed, that United, PBC, and FPB may compel arbitration of the claims brought by Plaintiff here.  [ECF No. 6 at 8–10].  A moving party is entitled to invoke arbitration "if the party seeking to invoke the arbitration clause is a party to the

agreement containing the arbitration provision."  Hargen-Rodriguez v. UBS Tr. Co. of P.R., No. 16-cv-02340, 2017 WL 2937592, at *3 (D.P.R. July 7, 2017) (citing InterGen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003)).  The Court is satisfied that United, PBC, and FPB are party to the Arbitration Agreement, as FPB issued the Contract and that they may therefore compel arbitration against Plaintiff, [Gilson Decl. ¶¶ 4, 9–12], United is FPB's "parent compan[y]," [id. ¶ 1], and further, that PBC, United's subsidiary, [id.], is an "entity [Plaintiff] assert[s] a Claim against in connection with a Claim [Plaintiff ] asserts against [FPB]," [id.; ECF No. 5-3 at 2]; see also Perez-Tejada v. Mattress Firm, Inc., No. 17-cv-12448, 2019 WL 830450, at *7 (D. Mass. Feb. 21, 2019) (allowing corporate officers of signatory to arbitration agreement to invoke arbitration where the agreement required arbitration for 'claims against all parent and subsidiary and related companies . . . as well as . . . employees.'").  As Plaintiff accepted the terms of the agreement by using the credit card, see supra, he is also a party to the agreement and bound by its terms.[8]  See Hargen-Rodriguez, 2017 WL 2937592, at *3 ("[T]he party against whom the moving party seeks to enforce the arbitration agreement [must be] a party to the agreement.") (citing InterGen N.V., 344 F.3d at 143).

The Court therefore finds that Defendants have met their burden by showing that (1) a valid agreement to arbitrate exists between the parties; (2) all the claims asserted by Plaintiff here come within the scope of the Arbitration Agreement; (3) Defendants are entitled to invoke

---

[8] Defendants also correctly point out that Plaintiff relies on the contract at issue here to make his claims, and that he may not "rely on the Contract in asserting claims against United and PBC but disavow the availability of arbitration to either entity under the Contract."  [ECF No. 6 at 9 (citing Machado, 28 N.E.3d at 409 ("[I]f a party's claims are so intimately founded in and closely related to an agreement which also mandates arbitration, the party opposing arbitration is equitably estopped from denying the arbitrability of its claims, even against a nonsignatory."))].

arbitration here; and (4) Plaintiff is bound to the terms of the Arbitration Agreement.

## IV.      CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay the case, [ECF No. 5], is <u>GRANTED</u>.  Plaintiff's claims against Defendants must, in the first instance, be arbitrated, and this case is <u>STAYED</u> pending the completion of that arbitration.[9]

**SO ORDERED.**

May 13, 2024                                              */s/ Allison D. Burroughs*
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE

---

[9] It is entirely within the Court's discretion to determine whether to dismiss or stay the case, <u>see</u> <u>Next Step Med. Co.</u>, 619 F.3d 67 at 71 ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable.  If some claims are non-arbitrable, the district court cannot dismiss the entire case.") (internal citations omitted and emphasis removed) (citing <u>Bercovitch</u>, 133 F.3d at 156 n.21).  Here, the Court utilizes its discretion to stay rather than dismiss the proceedings.